XEROX CORP., Plaintiff,

v.

3COM CORPORATION, U.S. Robotics Corporation, U.S. Robotics Access Corp., and Palm Computing, Inc., Defendants.

No. 97–6182–T.

United States District Court,
W.D. New York.

Sept. 27, 1998.

Harry P. Trueheart, III, Richard D. Rochford, Nixon, Hargrave, Devans & Doyle LLP, Rochester, NY, James A. Oliff, Darle M. Short, Edward P. Walker, Michael S. Culver, Richard E. Rice, Oliff & Berridge, Alexandria, VA, for Xerox Corporation, plaintiff.

Joseph A. Regan, Faraci, Lange, Johns, Regan & Schwarz, LLP, Rochester, NY, Bradley J. Hulbert, James C. Gumina, Curtis J. Whitenack, Christopher M. Cavan, Thomas E. Wetterman, McDonnell, Boehnen, Hulbert & Berghoff, Chicago, IL, for U.S. Robotics Corporation, U.S. Robotics Access Corp., Palm Computing, Inc., 3Com Corporation, defendants.

## DECISION and ORDER

TELESCA, District Judge.

### INTRODUCTION

Plaintiff, Xerox Corp. ("Xerox"), alleges that the defendants willfully infringed and continue to infringe on its patent identified as U.S. Patent No. 5,596,656 ("the '656 patent"). The defendants move for summary judgment, arguing that the patent at issue is invalid pursuant to 35 U.S.C. § 102(b) because of the inventions prior public use in the United States. Plaintiff cross-moves for partial summary judgment requesting a determination that the patent is not invalid as a matter of law. For the reasons that follow, the defendants' motion for summary judgment is denied and the plaintiff's cross-motion for partial summary judgment is granted.

### BACKGROUND

Xerox is the owner of the '656 patent entitled "Unistrokes for Computerized Inter-

pretation of Handwriting," which was issued on January 21, 1997. The invention involves using an alphabet of single-stroke characters for computerized handwriting recognition.

David Goldberg, a Xerox employee in the Palo Alto Research Center ("PARC"), invented an alphabet which has five single-stroke symbols (drawn at 0, 90, 180, and 270 degrees) for use in conjunction with a computer which utilizes a style for text input rather than a keyboard. In general, most pen-based computers use handprint recognition, which results in high error rates due to the inability of the computer to correctly interpret input of Roman alphabet characters primarily because of similarity between letters and "handwriting sloppiness". The Unistrokes alphabet results in less errors because the computer can easily interpret the single-stroke symbols.

Plaintiff claims that the defendants willfully infringed and are infringing on this patent by using and selling the invention. The accused product is the "PalmPilot" hand-held computer, which is sold by defendant Palm Computing, Inc. ("Palm"), and which allegedly uses the Unistrokes alphabet technology.

Xerox commenced this action on April 28, 1997 against U.S. Robotics Corp. and U.S. Robotics Access Corp. (hereinafter collectively "U.S. Robotics"). Defendants moved to transfer venue pursuant to 28 U.S.C. sec 1404 for the convenience of the parties and witnesses, which was denied by Decision and Order dated July 24, 1997. This Court granted plaintiff's unopposed motion to amend the complaint to add Palm, a wholly-owned subsidiary of U.S. Robotics, as a defendant. The Amended Complaint was further amended by leave of Court to add 3Com Corp. ("3Com") as a party defendant after 3Com and U.S. Robotics merged subsequent to commencement of the action.

The defendants move for summary judgment arguing that the '656 patent is invalid as a matter of law pursuant to 35 U.S.C. § 102(b) because of plaintiff's prior public use of the invention. Defendants claim that the inventor publicly used, disclosed and exploited the claimed invention in the United States more than one year prior to filing his patent application. Since the patent application was filed on October 6, 1993, the "critical date" for purposes of § 102 is October 6, 1992. Therefore, any "public use" of the invention in the United States prior to that date would invalidate the patent.

The alleged prior public use relates to Dr. Goldberg's creation and submission sometime prior to September 18, 1992 of a videotape of himself demonstrating the invention (along with a paper he wrote about the invention [1]) to two chairpersons of an industry conference—the INTERCHI '93 Conference. Dr. Goldberg requested their consideration to include his presentation and publication at a conference to be held in Amsterdam, the Netherlands in April 1993.[2] Defendants assert that Dr. Goldberg submitted the videotape without the benefit of any confidentiality agreement and for commercial purposes, i.e. world-wide publicity of his invention.

Xerox does not dispute that Dr. Goldberg created a videotape in which he demonstrates the Unistrokes technology. The video was allegedly produced by Xerox employees during a private demonstration by Dr. Goldberg in the Computer Science Laboratory at PARC. (Goldberg Decl. para. 2). Dr. Goldberg admits that the purpose for creating the video was to submit it to the INTERCHI '93 video review committee to be considered for presentation and publication at the April, 1993 conference. Xerox also concedes that, on September 15, 1992, Dr. Goldberg caused a copy of his demonstration video to be sent to the chairperson of the video review committee, Angela Lucas, in Cam-

---

1. Defendants make it clear that they do not challenge Dr. Goldberg's submission of his article about the invention as a "prior public use," but rather challenge only his disclosure of the demonstrative videotape.

2. Both Dr. Goldstein's paper and his video presentation involving the Unistrokes technology were accepted for presentation and publication

at the conference and he signed a copyright waiver giving permission to the Conference to publish both works. However, since the INTERCHI '93 Conference and publication of the paper and video did not take place until April of 1993 (i.e. after the October 6, 1992 "critical date") those events are not an issue in this case.

bridge, England. (See Exhibit B to Goldberg Decl., Shipping Records). Dr. Goldberg asserts that the conference was sponsored by a not-for-profit, scientific and educational society and that he had no commercial motive in submitting the video for publication at the conference. He also asserts that he fully expected his submission to be treated confidentially by the review committee until published in April of 1998.

Furthermore, Dr. Goldberg asserts that he also wrote and submitted a paper about the Unistrokes technology to the INTERCHI '93 papers review committee to be considered for presentation at the April, 1993 conference. (Goldberg Decl. Para 7). Dr. Goldberg states that he has no recollection and no specific record of when or to whom he sent the paper or whether a copy of the video was included. However, defendants point to an exhibit which reflects an e-mail communication by Dr. Goldberg with an abstract of his Unistrokes paper and a "note to reviewers," which states that "[i]f this paper is accepted, I will show a video during my talk. I have submitted a copy of that video along with 12 copies of this paper. However, the paper is written to stand alone without any video." (Emphasis supplied.) Defendants argue that this is proof that the video was disclosed to an individual in the United States, the INTERCHI '93 papers committee chairperson. Plaintiff asserts that the INTERCHI '93 papers committee consisted of two chairpersons, one in the United States and one in France, and that there was no way of knowing (1) whether the video was actually included with Dr. Goldberg's paper submission, and (2) to which co-chair the paper submission was actually sent. There is also no proof that any individual in the United States or abroad viewed the video prior to the critical date.

The plaintiff cross-moves for summary judgment, arguing that (1) defendants cannot show that there was any use of the videotape *in this country* prior to the critical date since the only copy of the video which was undisputedly submitted to the conference was sent by Dr. Goldberg to the video review committee chairperson in Cambridge, England; and (2) even if the videotape was also sent to a papers review committee co-chairperson in the United States, that would still be insufficient as a matter of law to constitute a "public use" under the statute.

The narrow issue for determination is whether the inventor's single disclosure of a video tape portraying his demonstration of the invention to the co-chair of an industry conference with an understanding and expectation of confidentiality (yet without an express confidentiality agreement) for the limited purpose of review to determine whether it is accepted for presentation at a future scientific conference is sufficient to constitute "a public use" under 35 U.S.C. § 102(b).

## DISCUSSION

### Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. V. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

A material fact is one that may affect the decision, so that the finding of that fact is relevant and necessary to the proceedings. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue is shown to exist if sufficient evidence is presented such that a finder of fact could decide the question in favor of the non-moving party. *Id.* at 255, 106 S.Ct. 2505. The evidence submitted by the nonmovant "is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* In ruling on a motion for summary judgment, the court must bear in mind the actual quantum and quality of proof necessary to support liability under the applicable law. *Id.* at 254, 106 S.Ct. 2505.

### The "Public Use" Bar to Patentability

A presumption of validity follows from issuance of a patent and, therefore, the burden is on the party alleging invalidity to establish it by clear and convincing evidence. 35 U.S.C. § 282; *Baxter Int'l Inc. v. COBE*

*Labs., Inc.,* 88 F.3d 1054, 1058 (Fed.Cir. 1996).

Pursuant to 35 U.S.C. sec. 102(b), an applicant is entitled to a patent, *inter alia,* unless

the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the application for patent in the United States.

35 U.S.C.A. § 102(b)(1984). "Public use" includes "any use of [the claimed] invention by a person other than the inventor who is under no limitation, restriction, or obligation of secrecy to the inventor." *In re Smith,* 714 F.2d 1127, 1134 (Fed.Cir.1983).

■■■ Whether a public use has occurred is a question of law. *Baxter, supra* at 1058. In determining whether a use is a "public use" within the meaning of § 102(b), the court must consider the totality of the circumstances in conjunction with the policies underlying the public use bar. *Tone Bros., Inc. v. Sysco Corp.,* 28 F.3d 1192, 1198 (Fed. Cir.1994) *cert. denied* 514 U.S. 1015, 115 S.Ct. 1356, 131 L.Ed.2d 214 (1995). Those policies include

(1) discouraging removal, from the public domain, of inventions that the public reasonably has come to believe are freely available; (2) favoring the prompt and widespread disclosure of inventions; (3) allowing the inventor a reasonable amount of time following sales activity to determine the potential economic value of a patent; and (4) prohibiting the inventor from commercially exploiting the invention for a period greater than the statutorily prescribed time.

*Id.* at 1198.

Defendants argue that use of an invention may be "public" where the invention is demonstrated or disclosed even to a single person other than the inventor if that person is under no obligation of secrecy and where no attempt has been made to keep the invention from the knowledge of the public, citing *Harrington Mfg. Co. v. Powell Mfg. Co.,* 815 F.2d 1478, 1480–82 (Fed.Cir.1986). However, *Harrington* does not stand for such a broad proposition. In *Harrington,* the inventor demonstrated his tobacco picker to a single person, a well-known agricultural journalist, who printed an article about the invention along with price quotations, prior to the critical date. That demonstration constituted an invalidating public use because of the "clear indication" that the inventor's motive in demonstrating his invention was "to exploit the harvester commercially." *Id.* at 1484.

Defendants also argue that, even if the video was never in fact viewed by anyone, Dr. Goldberg's submission of the videotape demonstration to a person not under any confidentiality agreement (with the mere possibility that the person *could* view and disseminate it), is sufficient to invoke the statutory public use bar, citing *Hall v. Macneale,* 107 U.S. 90, 97, 2 S.Ct. 73, 27 L.Ed. 367 (1883) and *Egbert v. Lippmann,* 104 U.S. 333, 14 Otto 333, 26 L.Ed. 755 (1881).

■■ I find no authority to support such a broad interpretation of the public use bar. The cases cited by the defendants in support of such a proposition invariably involve situations in which the inventions *could not be seen while they were in use* because, for example, they operate inside machinery (*see Hall v. Macneale, supra* [inner mechanics of a safe] ) or under clothing (*see Egbert, supra* [corset wires] ). But those cases do not hold that a "public use" can be public without the invention ever having been seen. Rather, they hold that an invention's use in public can be a "public use" even if the inner-workings are not immediately *exposed to the eye.* Those cases are inapposite to the issues in this case.

The only undisputed evidence of the video's disclosure is that it was submitted by Dr. Goldberg to the conference video review committee chairperson in Cambridge, England, not to any person in the United States. Plaintiff insists that there is no evidence that anyone in the United States ever received or viewed the video. Plaintiff argues that this is not a case similar to those cited by the defendants wherein inventors gave up control of their inventions by placing them in the hands of the general public.

Furthermore, plaintiff asserts, even if the video was sent to a person in the United States, the plaintiff is still entitled to judg-

ment as a matter of law since that disclosure is not a "public use" as contemplated by the statute since the submission(s) were intended to be and were accepted with the understanding of confidentiality and indeed were not released for a commercial purpose.

In support of this position, plaintiff submits the Declaration of D. Austin Henderson, Jr. ("Henderson"), the Co–Chairperson of the Technical Programme Committee for the INTERCHI '93 Conference. He clearly states that "[a]s a matter of formal policy and procedure as well as professional courtesy and practice, SIGCHI review committees treat *every submission confidentially,* as a draft, at all times prior to publication of the final version of the paper, videotape, or other category of submission at the conference." (Henderson Decl. ¶ 4) (emphasis mine).

Xerox also argues that Dr. Goldberg did not seek to "commercially exploit" his invention by submission of a video demonstration to a scientific review committee for the sole purpose of obtaining acceptance for publication in April of 1993.[3] Xerox asserts that this case should more appropriately be analyzed under the "printed publication" provision of 35 U.S.C. § 102(b) rather than the "public use" provision. Under that provision such submissions for review by a scientific committee prior to publication do not create a statutory bar to patentability, even in the absence of an express confidentiality agreement, since the preliminary submission for review is not a "publication" nor a "use" of the work.

The possibility that a demonstration video is viewed by a review committee as a precursor to potential publication of the video prior to the critical date is not sufficient to constitute a "public use" of the invention. There is no evidence that anyone other than the inventor himself actually used the invention prior to the critical date. It is important to note that "it is not public knowledge of his invention that precludes the inventor from obtaining a patent for it, but a public use or sale of it." *TP Laboratories, Inc. v. Profes-*

sional Positioners, Inc., 724 F.2d 965, 970 (Fed.Cir.1984).

With respect to public policy considerations, this is not a case in which an invention has been "removed from the public domain after the general public has come to believe that the invention is freely available." *See Baxter, supra.* The general public during the critical period had no access to the video or the invention.

Although there was no express contractual confidentiality agreement between Dr. Goldberg and the INTERCHI '93 review committee, the INTERCHI reviewer was under a professional ethical obligation to treat the material as confidential. There is no evidence that any reviewer accepted Dr. Goldberg's submission other than under circumstances protecting confidentiality. "[A] pledge of confidentiality is indicative of the inventor's continued control..." *TP Laboratories Inc.,* 724 F.2d at 972.

The Federal Circuit Court of Appeals reached a similar result in *Moleculon Research Corp. v. CBS, Inc.,* 793 F.2d 1261 (Fed.Cir.1986). There, the inventor of a puzzle displayed a model of his invention to other persons, including colleagues at school and work, without any mention of secrecy. Although there was no express agreement of confidentiality, the district court found that the inventor "never used the puzzle or permitted it used in a place or at a time when he did not have a legitimate expectation of privacy and confidentiality." *Id.* at 1265. The Federal Circuit agreed with the district court's holding that "the presence or absence of [an express confidentiality agreement] is not determinative of the public use issue." *Id.* at 1266.

The Federal Circuit quoted approvingly the district court's finding that

the relationship between the participants in the alleged uses evidences a retention of control by [the inventor]. None of those participants had any basis for inferring that the puzzle was being given over by [the inventor] for their free and unrestrict-

---

3. Indeed, neither Goldberg nor Xerox received any compensation or fees from the INTERCHI '93 Conference for either his video or paper presentation. In fact, Dr. Goldberg did not even

receive a complementary pass for the Conference but rather had to pay the standard registration fee in order to attend. (See Exhibit D to Goldberg Decl.)

ed use. Holding the public use bar inapplicable in these circumstances will not remove anything from the public domain. Moreover, there is absolutely no evidence in this case of commercially motivated activity by [the inventor] during the relevant period.

*Id.* at 1265–66, *quoting* 594 F.Supp. at 1427 (citations omitted). *Cf. Beachcombers v. WildeWood Creative Products, Inc.*, 31 F.3d 1154 (Fed.Cir.1994) [Affirming district court's finding that inventor's display of invention to friends at a party with no secrecy or confidentiality obligations constituted "public use" since inventor did not contain control over use of the device or distribution of information about it.]

Nor is there any evidence of any direct commercial exploitation of the invention by Dr. Goldberg or Xerox prior to the critical date. The INTERCHI '93 Conference paid no fees for the paper or video submissions, even after they were selected for presentation and publication. There is no claim that Goldberg or Xerox attempted to directly sell or market the invention prior to the critical date. Although publication and presentation at the Conference may have arguably had a commercial purpose, it is undisputed that the INTERCHI '93 Conference did not take place until after the critical date.

Finally, the policy favoring prompt and widespread disclosure of inventions is admirably served by events like the INTERCHI '93 Conference. A finding of public use in the peer-review forum under the circumstances presented in this case would no doubt have a chilling effect on scientific and academic submissions in future cases.

Even assuming the facts as defendants have alleged them to be true, they have nonetheless failed to establish by clear and convincing evidence a *prima facie* case that there was any "public use" of the Unistrokes technology prior to October 6, 1992. Accordingly, plaintiff is entitled to partial judgment as a matter of law based on my finding that the '656 patent is not invalid on the grounds of prior public use.

## CONCLUSION

For the aforestated reasons, defendants' motion for summary judgment (Docket # 50) is denied, and plaintiff's cross-motion for partial summary judgment (Docket # 76) is granted.

ALL OF THE ABOVE IS SO ORDERED.