BRISTOL–MYERS SQUIBB
CO., Plaintiff,

v.

BOEHRINGER INGELHEIM CORP.,
Ben Venue Laboratories, Inc., and
Bedford Laboratories,

and

Immunex Corporation,

and

Zenith Goldline Pharmaceuticals,
Inc. and IVAX Corporation,

and

Mylan Pharmaceuticals, Inc.,

and

Marsam Pharmaceuticals, Inc. and
Schien Pharmaceuticals, Inc.,
Defendants.

Zenith Goldline Pharmaceuticals, Inc.,
IVAX Corporation, and Baker Norton
Pharmaceuticals, Counterclaim Plaintiffs,

v.

Bristol–Myers Squibb Company,
Counterclaim Defendant.

Civ. A.Nos. 97–6050 (WHW), 98–159(WHW), 98–1412(WHW), 98–1488(WHW) and 98–2827(WHW).

United States District Court,
D. New Jersey.

March 2, 2000.

Andrew T. Berry, McCarter & English, Newark, NJ, for Bristol–Myers Squibb Co.

H. Curtis Meanor, Podvey, Sachs, Meanor, Catenacci, Hildner & Cocoziello, Newark, NJ, for Ben Venue Laboratories, Inc., Bedford Laboratories.

Frank Holahan, Harwood Lloyd, Hackensack, NJ, for Mylan Pharmaceuticals, Inc.

William Mentlik, Lerner, David, Littenberg, Krumholz & Mentlik, Westfield, NJ, for Zenith Goldline Pharmaceuticals, Inc., Ivax Corp., Immunex Corp.

Glenn S. Walter, Proskauer Rose LLP, Clifton, NJ, for Shein Pharmaceutical, Inc., Marsam Pharmaceuticals Inc.

## OPINION

WALLS, District Judge.

Defendants and counterclaimants Zenith Goldline Pharmaceuticals, IVAX Corporation, Baker Norton Pharmaceuticals, Immunex Corporation (collectively the "IVAX defendants") and Ben Venue Laboratories ("Ben Venue") move for summary judgment of invalidity of United States Patents Nos. 5,670,537 (" '537 patent") and 5,641,803 (" '803 patent") on the grounds of anticipation, 35 U.S.C. § 102(b), and obviousness, 35 U.S.C. § 103. Plaintiff Bristol–Myers Squibb ("Bristol") opposes the motions. The motions are granted in part.

Ben Venue's first motion for summary judgment of invalidity asserts that claims 1, 2, 5, 6, 8 and 9 of the '537 patent are invalid as anticipated or obvious by Mark Kris, et al., *Phase I of Taxol Given as a 3–Hour Infusion Every 21 Days*, 70 Cancer Treatment Reports 605–07 (1986) (the "Kris article"). Ben Venue further asserts that all claims of this patent are invalid as obvious from a written abstract ("OV.9 abstract") and oral presentation at an April 1991 meeting of the Clinical Trials Group of the National Cancer Institute of Canada ("NCIC"). Ben Venue's second motion for summary judgment of invalidity asserts that claims 1–3 and 6 of the '803 patent are anticipated by the Kris article and all claims of the '803 patent are anticipated by the OV.9 abstract. Zenith Goldline Pharmaceuticals, IVAX Corporation, Baker Norton Pharmaceuticals, and Immunex Corporation, in their motion, contend that claims 1–3 and 6 of the '803 patent and claims 1, 2, 5, and 8 of the '537 patent are anticipated by the Kris article; all claims of both patents are anticipated by the OV.9 abstract; and, all claims of both patents are invalid as obvious when the prior art, including but not limited to the Kris article and the OV.9 abstract, is considered in its entirety. Bristol responds that summary judgment is inappropriate and further argues that the prior art neither anticipates nor renders obvious the patents at issue.

### Summary Judgment Standard

Patent cases are not immune to summary judgment motions. The Federal Circuit has "repeatedly emphasized that 'summary judgment is as appropriate in a patent case as any other.'" *Avia Group Int'l, Inc. v. L.A. Gear California*, 853 F.2d 1557, 1561 (Fed.Cir.1988). Summary judgment is appropriate where the moving party establishes that "there is no genuine issue of fact and that [it] is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56. A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant and it is material if, under the substantive law, it would affect the outcome of the suit. *See id.* at 248, 106 S.Ct. 2505. The moving

party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. *See Celotex v. Catrett,* 477 U.S. 317, 318, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party opposing a motion for summary judgment must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *See Sound Ship Bldg. Co. v. Bethlehem Steel Co.,* 533 F.2d 96, 99 (3d Cir.1976), *cert. denied,* 429 U.S. 860, 97 S.Ct. 161, 50 L.Ed.2d 137 (1976). At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). And, the court must construe the facts and inferences in the light most favorable to the non-moving party. *See Wahl v. Rexnord, Inc.* 624 F.2d 1169, 1181 (3d Cir. 1980).

Defendants, here, contend that certain claims of both patents in suit are invalid because they were anticipated or rendered obvious by prior art. 35 U.S.C. §§ 102(b) & 103. Since patent claims are presumptively valid, 35 U.S.C. § 282, defendants must advance clear and convincing evidence of invalidity in order to succeed. *See generally Intel Corp. v. United States Int'l Trade Comm'n,* 946 F.2d 821, 829 (Fed.Cir.1991); *Tyler Refrigeration v. Kysor Indus. Corp.,* 777 F.2d 687, 690 (Fed. Cir.1985).

### Law of Anticipation

█ A patent is invalid as anticipated if: the invention ... was described in a printed publication in this or a foreign country ... more than one year prior to the date of the application for the patent in the United States.

35 U.S.C. § 102(b). Under Section 102(b), inventions described in a "printed publication" distributed over one year before the initial patent application cannot be patented. The question of whether a document is a printed publication is "a legal determination based on underlying fact issues and, therefore, must be approached on a case-by-case basis." *In re Hall,* 781 F.2d 897, 899 (Fed.Cir.1986). A document "disseminated or otherwise made available" "to persons concerned with the art to which the document relates" is a "printed publication." *Massachusetts Inst. of Tech. v. AB Fortia,* 774 F.2d 1104, 1109 (Fed. Cir.1985); *Carella v. Starlight Archery,* 804 F.2d 135, 139 (Fed.Cir.1986).

█ To invalidate an existing patent, a single prior publication must contain all of the essential limitations of each claim; there must be *identity* between the claimed process and a process described in a prior art reference. *See Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.,* 45 F.3d 1550, 1554 (Fed.Cir. 1995); *Hybritech, Inc. v. Monoclonal Antibodies, Inc.,* 802 F.2d 1367, 1379 (Fed. Cir.1986). Defendants must show that "each element of the claim in issue is found in a prior patent or publication, either expressly or under principles of inherency." *Tyler Refrigeration v. Kysor Indus. Corp.,* 777 F.2d 687, 689 (Fed.Cir.1985); *see also Celeritas Tech. Ltd. v. Rockwell Int'l Corp.,* 150 F.3d 1354, 1360 (Fed.Cir. 1998); *Verdegaal Bros., Inc. v. Union Oil Co.,* 814 F.2d 628, 631–32 (Fed.Cir.1987). Inherency occurs when the invention described by the prior art necessarily functions in accordance with a claim limitation, even if the limitation is not expressly mentioned in the art. *See generally* Robert Harmon, *Patents and the Federal Circuit* § 3.2 (4th ed.1999).

█ Claim anticipation in prior art is a finding of fact. *See Titanium Metals Corp. v. Banner,* 778 F.2d 775, 780–782 (Fed.Cir.1985); *Ecolochem, Inc. v. Southern California Edison Co.,* 863 F.Supp. 1165, 1179 (C.D.Cal.1994), *aff'd in part, rev'd in part,* 91 F.3d 169 (Fed.Cir.1996) ("Whether a [prior art] reference discloses

each element of the claim is a question of fact."). Defendants' motions, then, can only be granted if there are no genuine disputes of material fact whether the processes described in any one of the articles submitted anticipate the patents' claims.

■ The prior art need not present the invention in a positive light, so long as all claims are explicitly or inherently contained in the publication. *See Celeritas*, 150 F.3d at 1361 ("A reference is no less anticipatory if, after disclosing the invention, the reference then disparages it . . . . the question of whether a reference 'teaches away' from the invention is inapplicable to an anticipation analysis."); *see also Kalman v. Kimberly–Clark Corp.*, 713 F.2d 760, 772 (Fed.Cir.1983), *overruled on other grounds, SRI Intern. v. Matsushita Elec. Corp.*, 775 F.2d 1107 (Fed.Cir.1985) ("The law of anticipation does not require that the reference 'teach' what the subject patent teaches."); *Merck & Co. v. Mylan Pharm., Inc.*, 19 F.Supp.2d 334, 345–46 (E.D.Pa.1998); *see generally* Lance L. Barry, *Teaching A Way Is Not Teaching Away*, 79 J. Pat. & Trade. Off. Soc'y 867, 869 (1997) (a reference teaches away when "it suggests that the line of development flowing from the reference's disclosure is unlikely to be productive of the result sought by the applicant."). The invention as disclosed by the prior art, however, must be described so as to "enable" one skilled in the art to (1) identify all claim limitations and (2) create the invention.[1]

■ Thus, anticipation analysis is a three-step process. The first step is claim construction. The claims of the two patents in suit are constructed in a companion opinion (the "*Markman* Opinion"). The second step requires the Court to compare the properly constructed claims with the subject matter described in the prior art reference and identify the elements disclosed in the allegedly anticipating reference. The final step requires the Court to determine whether the prior art placed the allegedly disclosed matter in the possession of the public; the art must enable one skilled in the art to produce the claimed invention.[2] *See, e.g., PPG Indus., Inc. v. Guardian Indus. Corp.*, 75 F.3d 1558, 1566 (Fed.Cir.1996).

### Law of Obviousness

■ Under 35 U.S.C. § 103, a patent is invalid:

> though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

Obviousness of a patent is a mixed question of law and fact. The ultimate question of obviousness is one of law, based on certain factual determinations. *See In re Dance*, 160 F.3d 1339, 1342 (Fed.Cir.1998); *Richardson–Vicks, Inc. v. Upjohn Co.*, 122 F.3d 1476, 1479 (Fed.Cir.1997). The pri-

1. Prior art which "recommends" or "suggests" particular further experimentation may be sufficient to anticipate a claimed invention. *See Ciba–Geigy Corp. v. Alza Corp.*, 864 F.Supp. 429, 436 (D.N.J.1994) (Wolin, J.), *aff'd in part, vacated in part*, 68 F.3d 487 (Fed.Cir.1995) (in table). The *Ciba–Geigy* trial court examined a letter submitted as prior art in a patent action involving the invention of the "nicotine patch." 864 F.Supp. at 436. The physician writing the letter discussed methods of delivering nicotine into the bloodstream and hypothesized that "[a]nother alternative *might be* transdermal application much in the manner of nitroglycerine and

scopolamine patches." *Id.* (emphasis added). The patentholder argued that the letter was "mere speculation and conjecture" and a "curious inquiry." The court, however, rejected this argument and concluded that "the tenor of the letter is not relevant under Section 102(b)" and "all that matters is whether the . . . letter identifies the invention." *Id.* at 437.

2. For the purpose of these motions, both sides define one of ordinary skill as "a practicing oncologist who treats cancer patients with chemotherapeutic agents." IVAX Brf. at 25.

mary underlying factual determinations include: (1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the difference between the claimed invention and the prior art; and (4) the extent of any proffered objective indicia of nonobviousness. *See Graham v. John Deere Co.,* 383 U.S. 1, 17–18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). Objective indicia of nonobviousness, called "secondary considerations" of obviousness, include: (a) the invention's commercial success; (b) copying of the invention; (c) a long felt need for the invention; (d) failure of others to create the invention; and (e) unexpected results. *See In re Rouffet,* 149 F.3d 1350, 1355 (Fed.Cir.1998).

■ In this analysis, then, the Court must "look at the whole invention rather than merely its different elements," and must "step backward in time and into the shoes worn by a person of ordinary skill in the art when the invention was unknown and just before it was made." *Boehringer Ingelheim Vetmedica, Inc. v. Schering–Plough Corp.,* 68 F.Supp.2d 508, 530–31 (D.N.J.1999). The issue of whether the prior art "teaches away" from the invention, then, is relevant. *See generally Bausch & Lomb, Inc. v. Barnes–Hind/Hydrocurve, Inc.,* 796 F.2d 443, 448 (Fed.Cir. 1986) (portions of a reference teaching away from claimed invention should be considered when determining obviousness). In addition, multiple references may be combined to render a patent obvious where an artisan of ordinary skill would have known to combine the various references. *See In re Dance,* 160 F.3d at 1342–43 (there must be "some suggestion, teaching, or motivation [to combine] the prior art, arising from what the prior art would have taught a person of ordinary skill in the field of the invention").

■ A finding, however, that the patented invention may have been "obvious to try" from the prior art will not invalidate it. Prior art that makes the invention only "obvious to try" rather than "obvious" "gives either no indication of which param-

eters are critical or no direction as to which of many possible choices is likely to be successful." *Merck & Co. v. Biocraft Labs.,* 874 F.2d 804, 807 (Fed.Cir.1989). The correct standard is not whether the invention would have been "obvious to try" but whether one skilled in the art would have "a reasonable expectation that the beneficial result will be achieved." *In re Merck & Co.,* 800 F.2d 1091, 1097 (Fed.Cir. 1986); *see also* James Ruland, *Chapter 2100 of the Manual of Patent Examining Procedure—A Means For Persuasion,* 6 Tex. Intell. Prop. L.J. 49, 54 (1997) ("the standard with which obviousness is determined must be a reasonable expectation of success"). Thus, "absolute predictability" is not required. *Merck,* 800 F.2d at 1097.

### Prior Art References

*Kris Article*

In 1986, an article by Mark G. Kris, et al. ("Kris article") was published in a cancer journal. *See* Kris, et al., *Phase I of Taxol Given as a 3–Hour Infusion Every 21 Days,* 70 Cancer Treatment Reports 605–07 (1986). The seventeen patients in the study described in the article were suffering from various solid tumors. The trial was initiated at a dose of 15 mg/m$^2$ for three hours, "[e]scalation proceeded using doses of 30, 45, 75, 100, 135, 160 and 230 mg/m$^2$ .... [p]atients who experienced no drug-related toxicity were eligible to reenter the study at a higher dosage level." Kris article at 606. Three patients, two who received 190 mg/m$^2$ and one who received 230 mg/m$^2$, suffered from "treatment-limiting hypersensitivity reactions" ("HSRs"). *Id.* None of the patients was premedicated to reduce HSRs. The article noted that for those who received doses up to 190 mg/m$^2$, "leukopenia, thrombocytopenia, nausea and vomiting, alopecia, stomatitis, transient rashes and hypersensitivity reactions were observed. No anticancer effects were noted in this trial." *Id.* at 607. The first paragraph of the article—essentially a summary of the findings of the study—warned "[w]ith the severity

and unpredictability of the hypersensitivity reactions, further usage of taxol is not indicated with this drug formulation on this administration schedule." The final paragraph, however, stated:

> Hypersensitivity reactions constitute a severe and unpredictable treatment-limiting toxicity for the present cremaphor-containing formulation of taxol given on this schedule. *Further studies are needed to see if pretreatment regimens, alternative schedules [footnote to an article conducting a 24–hr. infusion schedule]; or a reformulated preparation will permit the safe administration of this compound.*

*Id.* at 607 (emphasis added). Bristol brought this article to the attention of the United States Patent and Trademark Office ("USPTO") during prosecution.

### O'Connell

An interim abstract of the Phase I study discussed in the Kris article appeared in March 1985. *See* O'Connell, et al., *Phase I Trial of Taxol Given as a Three Hour Infusion Every Three Weeks,* 26 Proceedings of the AACR 169 (No. 671) (March 1985). This abstract ("O'Connell abstract") described the Kris article's three-hour infusion/escalating dose schedule. The article stated that "no antitumor effects were observed" but concluded "that for doses up to 160 mg/m$^2$: 1) Taxol can be safely given as a 3 hour infusion every three weeks; 2) toxicities observed are myelosuppression, stomatitis, alopecia, and [unclear]." *Id.* at 169.

### McGuire Article

In 1989, a phase II study of taxol was undertaken which results were published in the "Annals of Internal Medicine." *See* William P. McGuire, et al., *Taxol: A Unique Antineoplastic Agent with Significant Activity In Advanced Ovarian Epithelial Neoplasms,* 111 Annals of Internal Medicine 273–79 (1989) ("McGuire article"). The forty-seven participating patients were treated for ovarian cancer with taxol infused over twenty-four hours once every twenty-two days. *Id.* Patients in the study were premedicated. Doses started in the range of 200–250 mg/m$^2$, but due to "unacceptable hematologic toxicity" doses were reduced to 170–200 mg/m$^2$, with further reductions to 110–135 mg/m$^2$ "in some heavily pretreated patients." The study found that twelve patients (30%) had a partial response to treatment and one had a complete response. *Id.* at 275. It further stated "[t]here appeared to be no correlation between the actual average dose of taxol and the likelihood for response. The complete responder could only tolerate 110 mg/m$^2$ because of hematologic toxicity . . . ." *Id.* at 276.

### NCIC Abstract

In early 1991, Bristol devised a clinical trial (the "OV.9 study") which involved administering taxol to one hundred and fifty-seven cancer patients at one of two different doses for one of two different durations: a 135 mg/m$^2$ infusion administered for either three or twenty-four hours and 175 mg/m$^2$ infusion administered for either three or twenty-four hours, all to premedicated patients. The existence of the OV.9 study was the subject of a written abstract ("OV.9 abstract") and oral presentation at an April 1991 meeting of the Clinical Trials Group of the National Cancer Institute of Canada ("NCIC"). This meeting was attended by members of the Canadian oncological medical community, as well as employees of defendant pharmaceutical companies. Registered participants received a copy of the OV.9 abstract. *See* Alper Decl Exh. 10 at 325–26 (Bates Nos. BMS849174–75); Mentlik Sec. Suppl. Decl. Exh. S (ZAT0302–303). The abstract includes a schema captioned "eligible platinum pre-treated patients" and describes the four different regimens for administering taxol used in the OV.9 study. Specifically, "Arm B" describes "Taxol 175 mg/m$^2$ by 3–hour continuous infusion" and "Arm D" describes "Taxol 135 mg/m$^2$ by 3–hour continuous infusion."

### The Vancouver Sun Article

In July 1991, Dr. Kenneth Swenerton, a chair of the OV.9 study in Canada, described the pending clinical trial to the Vancouver Sun. *See* Bart Jackson, *B.C. Cancer Patients to Try Drug Derived From Yew*, Vancouver Sun, July 31, 1991, at C14. He stated that the study will "attempt to reveal how much taxol is required to be effective in reducing ovarian cancer tumors" and will also "test whether the drug needs to be administered intravenously in three-hour or 24–hour sessions." *Id.*

### Anticipation Analysis

The first step in an anticipation analysis is claim construction. *See Markman* Opinion. The second step requires the Court to compare the properly constructed claims with the subject matter described in the prior art reference and identify the elements disclosed in the allegedly anticipating reference.

### '537 Patent

 Both Ben Venue and the IVAX defendants assert that claims 1, 2, 5 and 8 of the '537 patent are invalid as anticipated by the Kris article. Ben Venue adds claims 6 and 9 to this list. To repeat, to be anticipated, the invention must be described in a printed publication more than one year before the date of the application for the patent in the United States. *See* 35 U.S.C. § 102(b). Defendants must show that "each element of the claim in issue is found in a prior patent or publication, either expressly or under principles of inherency." *Tyler*, 777 F.2d at 689. Here, neither side disputes that the Kris article was (1) published more than one year before Bristol's application for the '537 patent was filed and (2) described in a "printed publication." The Kris article was published in 1986 and appeared in a cancer journal six years before Bristol's initial application was filed.

The '537 patent consists of the following limitations—administering the drug to patients suffering from various forms of tax-ol-sensitive tumors (further defined in the dependent claims) while (i) premedicating a patient with a medicament that reduces or eliminates hypersensitivity reactions, and (ii) parenterally administering to said patient about 135–175 mg/m$^2$ taxol over about three hours. *See Markman* Opinion.

### Treating Taxol–Sensitive Tumors

Kris describes the treatment of patients suffering from various solid tumors which included two suffering from renal cell carcinoma. Kris article at 606. According to Bristol "treatment protocol can be used for the treatment of other forms of cancer with taxol, such as melanoma, renal cell carcinoma, and other cancers which are treatable with taxol." '537 Patent, Col. 5, ln. 55–63. Thus, Kris identifies the types of tumors included in claims 1, 2, 5, 6, 8 and 9. The other claims of this patent are directed to the treatment of ovarian cancers, a type of cancer not referenced by Kris.

### At 175–135 for About 3 hrs

Kris administered taxol to patients for a three-hour duration. All claims of the '537 patent are directed to this duration. Kris's patients received taxol doses which included 135 and 160 mg/m$^2$. Claim 1 is directed to dosages between 135 and 175 mg/m$^2$ and claim 2 addresses a dosage of 135 mg/m$^2$. When a claim element is recited as a range of values, as is claim 1, that claim element is anticipated by a prior art disclosure which describes any value in that range. *See In re Wertheim*, 541 F.2d 257, 267 (Cust. & Pat.App.1976) ("the disclosure in the prior art of any value within a claimed range is an anticipation of the claimed range"); *Ex parte Lee*, 31 U.S.P.Q. 1105, 1106 (Bd. of Patent App. 1993).

### Premedicating The Patient

Kris did not conduct his trial on premedicated patients. As a result, he had three patients who suffered from "treatment-limiting" HSRs. These three patients received taxol dosages in excess of the 135–175

mg/m² patented by Bristol. Kris also noted that other patients also suffered from HSRs which varied in severity. He concluded that "[f]urther studies are needed to see if pretreatment regimens ... will permit the safe administration of this compound."

Bristol argues that this mere "suggestion" to premedicate cannot anticipate the '537 patent's premedication limitation. The defendants counter that this recommendation explicitly references the limitation, thus, it is anticipated by the Kris article. The Court finds that, as in *Ciba–Geigy*, the "tenor" of the explicit reference is immaterial to an anticipation analysis. *See Ciba–Geigy Corp. v. Alza Corp.*, 864 F.Supp. 429, 436 (D.N.J.1994), *aff'd in part, vacated in part*, 68 F.3d 487 (Fed.Cir.1995) (in table); *see also Celeritas Tech. Ltd. v. Rockwell Int'l Corp.*, 150 F.3d 1354, 1360 (Fed.Cir.1998). All that matters is that the article (1) identifies the premedication limitation sufficiently to (2) allow one of ordinary skill in the art to replicate the invention ("enablement"). And it does.

*Final Step: Enablement*

This comparative analysis of the Kris article and the limitations set in the '537 patent leads to the inexorable conclusion that the article explicitly references all of the patent's limitations. The final step of anticipation analysis requires the Court to determine whether the prior art would enable one skilled in the art to produce the claimed invention.

The enablement inquiry centers on whether one skilled in the art to which the "invention pertains could take the description of the invention in the printed publication and combine it with his own knowledge of the particular art and from this combination be put in possession of the invention on which a patent is sought." *In re Sasse*, 629 F.2d 675 (Cust. & Pat.App. 1980). Moreover, "[p]rior art references are presumed to be enabling." *See id.* at 681. It should also be noted that even "a disclosure lacking a teaching of how to use a fully disclosed compound for a specific, substantial utility ... is, under the present state of the law, entirely adequate to anticipate a claim" if one of ordinary skill can replicate the patented method. *In re Schoenwald*, 964 F.2d 1122, 1124 (Fed.Cir. 1992).

This is precisely what defendants argue—that one of ordinary skill in the art can replicate the patented method. Conversely, Bristol disputes enablement because premedication is only "suggested." The Court, however, has concluded that Kris discloses all necessary steps—dosage levels, duration of infusion and premedication—to administer taxol in the patented manner. Ordinarily, where the capability of one skilled in the art to replicate the claimed invention is disputed, summary judgment is inappropriate. Here, however, based on statements made by Bristol at the time it applied for the patent(s), the Court determines that one skilled in the art would have known exactly what Kris's premedication "suggestion" entailed and would have not have had to engage in further experimentation to gain possession of the patented ('537) invention. The Court is impressed by Bristol's admission during patent prosecution that:

> [T]he claimed invention is not drawn to a synergistic combination, but rather to a novel method for administering taxol to patients that have been pre-treated with conventional medication for minimizing hypersensitivity reactions in combination with taxol infusion over a duration not exceeding 6 hours.

> . . . . .

> It would be understood by one skilled in the art that the administering physician will often administer several such anti-hypersensitivity medications prophylactically prior to the administration of taxol. There is a variety of such medications, and their selection and use would be conventional.

Alper Ex. 14 at 5. Bristol avers that this statement was made in response to a re-

striction requirement entered by the Patent Examiner and that it did not concede "that it would have been obvious that one [skilled in the art] could safely and efficaciously administer taxol ... by combining premedication with what is described in Kris." Brf. at 24.

The Court cannot ignore Bristol's statements made during prosecution merely because they were made in response to action taken by the Patent Examiner. *See Tyler Refrigeration v. Kysor Indus. Corp.*, 777 F.2d 687, 690 (Fed.Cir.1985). Bristol clearly stated that by the early1990s, premedication of taxol recipients in order to reduce HSRs was "conventional." This statement was not qualified by expected infusion duration. It is further uncontroverted that in 1986, Kris had observed "treatment-limiting" HSRs and proposed further study with premedication. The Court concludes there is no true dispute that one skilled in the art at the time of application would have understood that (a) taxol infusions create HSRs; (b) HSRs can be treatment-limiting; (c) premedication prevents HSRs; and (d) taxol can be administered to premedicated patients.[3]

Kris's direct suggestion to premedicate would enable one skilled in the art to follow the steps to create the patented method of administering taxol. The Court concludes that claims 1, 2, 5, 6, 8 and 9 of the '537 patent are anticipated by the Kris article.

*Note On Argued Additional Limitations of Both Patents*

The patents in suit have been constructed without the stated goals of reducing toxicity levels and tumor regression deemed claim limitations (*see Markman* Opinion). However, even if the disputed phrase in the '537 patent's preamble were read to contain claim limitations rather than as statements of purpose, it may be anticipated by a reference which does not

appreciate the beneficial results for two overlapping reasons: First, the beneficial outcome may be an inherent result of practicing the method steps set out in the prior art. A patent can be anticipated by a piece of prior art if the art "inherently" discloses the patent's claims. *See* 35 U.S.C. § 102(b); *see generally* Robert Harmon, *Patents and the Federal Circuit* § 3.2 (4th ed. 1999) (Inherency is when the invention described by the prior art necessarily functions in accordance with a claim limitation, even if the limitation is not expressly mentioned in the art).

■ Second, even prior art which does not recognize certain results can anticipate a patent. Where the prior art discloses the steps of a process, and experiments conducted by the patent holder did not "manipulate or otherwise alter the basic application and experimentation" disclosed in the prior art, the patent is invalid as anticipated. *See Integra LifeSciences I Ltd. v. Merck KGaA*, 50 U.S.P.Q.2d 1846, 1850, 1999 WL 398180 (S.D.Cal.1999).

■ Ben Venue argues that the Kris article (and the NCIC OV.9 abstract, discussed later) anticipate the patents even though neither of the articles mentions a reduction in hematologic toxicity nor tumor regression. Ben Venue essentially asserts that, in the '803 patent and claims 5–10 of the '537 patent, a reduction in toxicity and tumor size is "the necessary result" of practicing the steps disclosed by prior art. Anticipation, Ben Venue argues, cannot be avoided by "simply reciting some theretofore unappreciated result" of the disclosed steps.

Caselaw supports Ben Venue's contention. In *MEHL/Biophile Int'l Corp. v. Milgraum*, the Federal Circuit affirmed the invalidation of a patent which set out a "method of hair depilation." 192 F.3d 1362, 1364–66 (Fed.Cir.1999). The invali-

---

**3.** Claims 6 and 9 refer to specific types of premedication. Bristol has not distinguished the medications used in these claims, thus the Court finds that these drugs fall into the category of "conventional medication for minimizing hypersensitivity reactions" referenced by Bristol during prosecution.

dating prior art disclosed the identical steps of practicing the method set out in the patent, but had used "the epilated [hairless] backs of guinea pigs" to perform studies on "tissue damage" rather than hair depilation. *See id.* ("the Polla article's failure to mention hair depilation as a goal is similarly irrelevant .... [the patentholder] does not dispute on appeal that the laser operating parameters disclosed in the article substantially coincide with those disclosed in the patent"). The Federal Circuit disregarded the stated "goal" of the patent and concluded "[w]here, as here, *the result is a necessary consequence of what was deliberately intended, it is of no import that the article's authors did not appreciate the results".* *Id.* at 1366 (emphasis added) (citing *W.L. Gore & Assocs. v. Garlock, Inc.,* 721 F.2d 1540, 1548 (Fed.Cir.1983)).

To resay, where the prior art discloses the steps of a process, and experiments conducted by the patentholder did not "manipulate or otherwise alter the basic application and experimentation" disclosed in the prior art, the patent is invalid as anticipated. See *Integra LifeSciences I Ltd.,* 50 U.S.P.Q.2d at 1850, where the district court concluded that "the entire basis of plaintiffs' '621 Patent appears to have been founded, *not on a new or unique derivation of the methods* outlined in the 1984 Nature article [the prior art reference], *but rather, upon plaintiffs' extended laboratory observations of the exact same ... reactions* on a variety of cells and substances." *Id.* (emphases added). Though the anticipating article taught how to prevent certain cells from attaching to substrates and the patent was for a method of inhibiting cell proliferation, that Court found the steps of the two processes to be identical. "The fact that subsequent

experiments [leading to the patent] were conducted for *a longer period of time to achieve a variety of different results* does not alter the fact that plaintiffs' central and underlying method" had been disclosed over one year before the initial patent application was filed. *Id.* (emphasis, present writer's).

■ These cases affirm the proposition that unexpected or unappreciated results from a method already disclosed to the public cannot be patented as a new invention—"if the prior art is reproducible it is irrelevant that those using it may not have appreciated its results."[4] *See generally Candela Laser Corp. v. Cynosure, Inc.,* 862 F.Supp. 632, 642 (D.Mass.1994) ("Finally, in plaintiff's view, [the inventors] envisioned and promoted their filter as a device for purifying solvent, not for regenerating the dye solution. What [an inventor] may have thought of the system at the time of its discovery is, however, irrelevant to an anticipation analysis"); *see also In re Woodruff,* 919 F.2d 1575, 1577–78 (Fed. Cir.1990); *In re Zierden,* 56 C.C.P.A. 1223, 411 F.2d 1325, 1327–28 (Cust. & Pat.App. 1969) ("It seems to us that the composition would be exactly the same whether the user was told to cure pneumonia with it or to promote plant growth").

### '803 Patent

All defendants contend that claims 1–3 and 6 of the '803 patent are anticipated by the Kris article. The major difference between the '803 and '537 patents is the premedication step, absent in '803. *See Markman* Opinion. For this reason, the Court finds that claimed steps of the '803 patent (1–3 and 6) are explicitly present in Kris.[5] The dispute over whether Kris's suggestion to premedicate is sufficient to anticipate is immaterial.

---

4. The case relied upon by Bristol at oral argument to support its contention that prior art which does not achieve the patented results cannot anticipate is inapplicable; the issue addressed in *Fromson* was obviousness, where unanticipated or contrary results are relevant to the inquiry. *Fromson v. Advance*

*Offset Plate, Inc.,* 755 F.2d 1549 (Fed.Cir. 1985).

5. As with the '537 patent, claims which are directed to the treatment of ovarian cancer are not anticipated.

Additionally, as in the discussion on inherent/unappreciated results above, even if the Court were to deem reducing toxicity a claim limitation (*see Markman* Opinion), these results are the "necessary consequence" of practicing the methods steps and are inherently contained in the Kris article.

The Court concludes that claims 1–3 and 6 of the '803 patent are anticipated by Kris.

*OV.9 Abstract*

The IVAX defendants argue that all claims of both patents are anticipated by the OV.9 Abstract distributed at the NCIC conference in April 1991. The Court addresses this argument, even though certain claims of both patents have been ruled anticipated by Kris.

As noted, Arms B and D described three hour infusions of taxol at either 135 mg/m$^2$ or 175 mg/m$^2$. Defendants assert that "the 4/91 CTG Abstract—with the sole exception of explicitly discussing premedication—discloses all elements of all [ ] claims." Bristol responds with three arguments: (1) "the 1991 Handout never suggests the use of premedication for any purpose, let alone in combination with a 3–hour infusion regimen"; (2) the abstract is merely "ink on paper," not the reported results of an actual study; and (3) the OV.9 Abstract is not a "printed publication" capable of barring or invalidating a patent under 35 U.S.C. §§ 102(b) or 103. The last argument will be first addressed.

■■■ Under Section 102(b), inventions described in a "printed publication" distributed over one year before the initial patent application cannot be patented. The question of whether a document is a printed publication is "a legal determination based on underlying fact issues and, therefore, must be approached on a case-by-case basis." *In re Hall*, 781 F.2d 897, 899 (Fed.Cir.1986). "Public accessibility," is the defining characteristic of a printed publication. This determination is made by considering the following factors: (1) the number of copies made; (2) their availability to the "public"; (3) the extent of the document's dissemination; and (4) the intent behind distribution. *See* Donald R. Palladino, *The Publication Bar: How Disclosing An Invention to Others Can Jeopardize Potential Patent Rights*, 37 Duq. L.Rev. 352, 355 (Winter 1999)

To iterate, the intent behind distribution is key; confidential documents will not bar issuance of a patent. *See id.; Pickering v. Holman*, 459 F.2d 403, 407 (9th Cir.1972). Confidentiality need not be express so long as the printed materials are distributed "with an understanding and expectation of confidentiality." *See Xerox v. 3Com Corp.*, 26 F.Supp.2d 492, 494 (W.D.N.Y.1998); *see also Aluminum Co. of America v. Reynolds Metals Co.*, 14 U.S.P.Q.2d 1170, 1172, 1989 WL 165064 (N.D.Ill.1989) ("an understood, even though silent, limitation on access can be every bit as effective as an express one"). For *Xerox*, a videotape explaining an invention distributed at a "peer review forum" was not a "printed publication" because the tape was only made available to a limited group of people for a limited purpose.

Bristol offers the declarations of certain NCIC conference attendees who state that the NCIC materials were not for public consumption. Brf. at 32–33; Rozencweig Dep. at 99 ("For all these cooperative group meetings ... this is considered ... confidential information"); Eisenhauer Dep. at 308–09 ("What is discussed in these meetings is not for publication, not for sending photocopies around the world"); Onetto Dep. at 49 ("It's the policy of the NCIC ... that the information that is discussed is confidential"). Defendants counter that the confidentiality of the OV.9 abstract was never communicated to attendees, was distributed to all who were invited to the NCIC conference and was received by employees of Bristol's competitors. Ben Venue '537 Brf at 27; *see, e.g.*, Pearcey Decl. at ¶ 3 ("I have no recollection of being either requested or

directed ... to restrict my use or disclosure" of the NCIC abstract).

■ Summary judgment must be denied where there is a genuine issue of material fact. Here, based on a review of declarations submitted by both sides, the Court concludes that underlying disputed factual issues regarding "public accessibility" preclude any present determination that the OV.9 abstract is a Section 102(b) "printed publication." The IVAX defendants' motion for summary judgment of invalidity of the '537 patent because of anticipation by the OV.9 abstract is denied; the Court need not address Bristol's remaining arguments.

### Obviousness Analysis

As discussed, a patented invention is obvious "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a` person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103. Obviousness of a patent is a mixed question of law and fact. The primary underlying factual determinations include: (1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the difference between the claimed invention and the prior art; and (4) the extent of any proffered objective indicia of nonobviousness. *See Graham v. John Deere Co.*, 383 U.S. 1, 17–18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966).

*Kris Article*

Ben Venue argues that the even if Kris does not anticipate the '537 patent, the article renders obvious claims 1, 2, 5, 6, 8 and 9. This argument is addressed though the Court has concluded that Kris anticipates these claims.

Bristol's main argument in opposition to summary judgment of obviousness is that Kris "teaches away" from further use of the three-hour schedule and observed no antitumor efficacy. So, at most, the Kris article provides only a "suggestion to try" further combinations and is insufficient to bar patentability under § 103. Brf. at 24. Bristol also argues that Ben Venue ignores the objective indicia used to determine obviousness—(a) the invention's commercial success; (b) copying of the invention; (c) a long felt need for the invention; (d) failure of others to create the invention; and (e) unexpected results.

The initial issue is whether at the time of application, premedication to prevent Kris's observed "treatment-limiting" HSRs would have been obvious to one skilled in the art. Ben Venue, once again, relies primarily on Bristol's statement made during the patent's prosecution that "[i]t would be understood by one skilled in the art that the administering physician will often administer several such anti-hypersensitivity medications prophylactically prior to the administration of taxol .... their selection and use would be conventional." Alper Ex. 4.

The Court concluded above that there can be no true dispute that one skilled in the art at the time of application would have understood that (a) taxol infusions create HSRs; (b) HSRs can be treatment-limiting; (c) premedication prevents HSRs; and (d) taxol can be administered to premedicated patients.

■ Nonetheless, the Court finds that there are a number of disputed factual issues which preclude an obviousness determination at this time. Most of these concern objective indicia of obviousness. Unlike anticipation, where the "tenor" of the prior art does not matter, a Court must consider the conclusions reached by earlier researchers in determining obviousness. *See generally In re Rouffet*, 149 F.3d 1350, 1355 (Fed.Cir.1998). Here, Bristol takes the position that the results of the OV.9 study were "unexpected" based, in part, on the fact that Kris had not observed any antitumor efficacy. Ben Venue disputes this.

■ Further, obviousness is determined by looking at the patent as a whole in view of the prior art, not at each individ-

ual claim limitation as is done to determine anticipation. *See Boehringer Ingelheim Vetmedica, Inc. v. Schering–Plough Corp.,* 68 F.Supp.2d 508, 530–31 (D.N.J.1999). It cannot be gainsaid that Bristol sought to patent a method of administration to treat cancer patients. Looking at the patent as a whole and comparing it to Kris's admission that the later-patented treatment method was ineffective, the Court cannot now rule that one skilled in the art would have had "a reasonable expectation that the beneficial result will be achieved" by administering taxol according to Kris's schedule to a premedicated patient. *See In re Merck & Co.,* 800 F.2d 1091, 1097 (Fed.Cir.1986).

### *OV.9 Abstract*

Ben Venue further argues that the OV.9 abstract renders obvious all claims of the '537 patent. Because this Court has deferred decision on whether this abstract qualifies as prior art, this argument is not considered.

### *Prior Art In The Aggregate*

The IVAX defendants aver that "all claims of both the '803 and '537 patents . . . define inventions that would have been obvious at the time of the alleged inventions to a person having ordinary skill in the art" based on a review of the prior art in the aggregate. IVAX Brf. at 21–22. The pieces of prior art specifically referenced by IVAX are summarized in the beginning of this Opinion. This argument is addressed notwithstanding the ruling that some claims of the patents are anticipated.

As said, any reference to the OV.9 abstract as prior art is premature. Additionally, the Court cannot conclude at this time that Kris renders obvious the '537 patent when the patent is examined as a whole. The same concerns that apply to Kris and the '537 patent also apply to the '803 patent—it is disputed whether the article would lead a practitioner to conclude that he or she would have a "reasonable expectation of success" from following the Kris method steps.

If Kris is combined with McGuire, who conducted successful trials on premedicated patients at 135 mg/m$^2$ for 24 hours; O'Connell, who predicted that "[t]axol can be safely given as a 3 hour infusion every three weeks" but also stated that no anti-tumor efficacy was observed by Kris; and, the Vancouver Sun article which stated that Bristol was "test[ing] whether the drug needs to be administered intravenously in three-hour or 24–hour sessions" and will "attempt to reveal how much taxol is required to be effective in reducing ovarian cancer tumors," the same deficiency that led the Court to deny summary judgment on obviousness over Kris becomes apparent. The patent *as a whole* is concerned with treating patients suffering from cancer; while tumor regression with limited side effects is not a claim limitation, it is the objective of practicing the claimed method steps. *See Markman* Opinion. Whether one would have a reasonable expectation of success—that is, achieving the invention's goals by administering the claimed dosage for three hours—is a disputed issue of material fact that can only be determined by further testimony at trial.

### Conclusion

Defendants and counterclaimants Zenith Goldline Pharmaceuticals, IVAX Corporation, Baker Norton Pharmaceuticals, Immunex Corporation (collectively the "IVAX defendants") and Ben Venue Laboratories ("Ben Venue") motions for summary judgment of invalidity of United States Patents Nos. 5,670,537 (" '537 patent") and 5,641,-803 (" '803 patent") on the ground of anticipation, 35 U.S.C. § 102(b), are granted in part. The Court finds that claims 1, 2, 5, 6, 8 and 9 of the '537 patent and claims 1–3 and 6 of the '803 patent are anticipated by the Kris article. Defendants' motions for summary judgment of invalidity on the ground of obviousness, 35 U.S.C. § 103, are denied.

### ORDER

Defendants and counterclaimants Zenith Goldline Pharmaceuticals, IVAX Corpora-

tion, Baker Norton Pharmaceuticals, Immunex Corporation (collectively the "IVAX defendants") and Ben Venue Laboratories ("Ben Venue") move for summary judgment of invalidity of United States Patents Nos. 5,670,537 (" '537 patent") and 5,641,-803 (" '803 patent") on the grounds of anticipation, 35 U.S.C. § 102(b), and obviousness, 35 U.S.C. § 103. Having heard oral argument, upon consideration of the parties' submissions, and for the reasons stated in the accompanying Opinion:

It is, on this day of March, 2000,

ORDERED that IVAX and Ben Venue's motions for summary judgment of invalidity of the '803 and '537 patents on the ground of anticipation, 35 U.S.C. § 102(b), are granted in part. The Court finds that claims 1, 2, 5, 6, 8 and 9 of the '537 patent and claims 1–3 and 6 of the '803 patent are anticipated by the Kris article; it is further,

ORDERED that defendants' motions for summary judgment of invalidity on the ground of obviousness, 35 U.S.C. § 103, are denied.